UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER WOODS NYARECHA, individually; ESTATE OF LEWIS NYARECHA, by and through Peter Woods, successor in interest,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERRIFF'S DEPARTMENT, DEPUTY MARKUS CRUZ, DEPUTY STEPHAN SAENZ, DEPUTY TYLER SNELL, and DEPUTY K. BLANDON,<br><br>Defendants. | Case No. 2:20-cv-04474-WLH-MAA<br><br>**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [132]** |

## I. BACKGROUND

This case stems from a tragedy. On March 10, 2018, decedent Lewis Nyarecha ("Nyarecha"), a 22-year-old man, was arrested for attempted bank robbery under Cal. Penal Code sections 664/211. (Separate Statement of Undisputed Facts ("SSUF"),

Docket No. 144 ¶ 3). After his arrest, Nyarecha was placed in the custody of Defendant Los Angeles County Sheriff's Department (the "Sheriff's Department") and held on bond at the Twin Towers Correctional Facility in Los Angeles. (*Id.* ¶ 4). On March 15, 2018, Nyarecha received a psychiatric assessment and described hearing voices in his sleep. (*Id.* ¶ 5). Nyarecha indicated that he had taken a medication called Seroquel in the past with success. (*Id.*) A doctor prescribed Nyarecha a daily dose of Seroquel. (*Id.*)

Nyarecha was housed in Moderate Observation Housing, C Pod, in cell #5. (*Id.* ¶ 19). Under California law, jail personnel must conduct inmate safety checks at least once every hour "through direct visual observation." Cal. Code Regs. Tit. 15, § 1027.5. In Moderate Observation Housing, personnel are required by Sheriff's Department policy to conduct these safety checks every 30 minutes. (SSUF ¶ 21).

Nyarecha received intermittent psychiatric evaluation throughout his stay at the Twin Towers Correctional Facility, and his prescribed dose of Seroquel was adjusted accordingly. *(Id.* ¶ 12). Dr. Kavaita Khajuria performed Nyarecha's last psychiatric assessment, on May 22, 2018. (*Id.* ¶ 13). Based on that assessment, Dr. Khajuria did not believe that Nyarecha was at a heightened risk of suicide. (*Id.* ¶ 16).

At approximately 11:00 a.m. on June 6, 2018, an inmate trustee discovered Nyarecha unresponsive in his cell. (*Id.* ¶ 31). The trustee reported down to Deputy Jonathan Steele, who responded, along with Defendant Deputy Markus Cruz, to Nyarecha's cell. (*Id.* ¶¶ 32-33). The deputies removed Nyarecha from his bunk and performed CPR on him until they were relieved by nursing personnel. (*Id.* ¶¶ 35, 37). Nyarecha was pronounced dead by paramedics at 11:32 a.m. (*Id.* ¶ 38). The Department of the Medical Examiner-Coroner found that Nyarecha had died of Seroquel toxicity and classified Nyarecha's death as a suicide. (*Id.* ¶¶ 9, 41).

On May 18, 2020, Plaintiff Peter Woods, Nyarecha's father, brought this suit on behalf of himself and as representative of Nyarecha's estate. (Compl., Docket No. 1).

2

On May 28, 2021, Woods filed the operative Third Amended Complaint. (Third Am. Compl. ("TAC"), Docket No. 45). The crux of Woods's claims is that the deputies assigned to perform safety checks on Nyarecha every half hour did not do so in the hours before Nyarecha's death, thereby missing signs that Nyarecha had overdosed and, ultimately, failing to prevent Nyarecha's death. (*Id.*).

Woods alleges four causes of action, all under 42 U.S.C. § 1983, against the County of Los Angeles, the Sheriff's Department (collectively, the "County Defendants"), and Deputies Cruz, Stephen Saenz, Tyler Snell, and K. Blandon (collectively, the "Individual Defendants"). (TAC). Woods brings 1) a claim for failure to protect from harm in violation of the Fourteenth Amendment against the Individual Defendants (the "First Claim"); 2) a claim for deliberate indifference to serious medical and mental health needs in violation of the Fourteenth Amendment against the Individual Defendants (the "Second Claim"); 3) a claim under *Monell* against the County Defendants (the "Third Claim"); and 4) a claim for interference with familial association in violation of the Fourteenth Amendment against all Defendants (the "Fourth Claim"). Defendants move for summary judgment on all four claims. (Mot. for Summ. J., Docket No. 132).

## II. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the nonmoving party will have the burden of proof at trial, as here, the movant can prevail by pointing out that there is an absence of evidence to support the

nonmoving party's case. *Id.* The moving party may do so in one of two ways: by either "produc[ing] evidence negating an essential element of the nonmoving party's case, or… show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (citing *Celotex*, 477 U.S. 317; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1986)). The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The Court must draw all reasonable inferences in the light most favorable to the nonmoving party. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). Where, taken in that light, the record "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and the court must grant summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

For the reasons below, the Court **GRANTS** Defendants' Motion for Summary Judgment on all claims.

#### A. Evidentiary Objections

Defendants objected to portions of the declaration of Woods's expert, Dr. Martin E. Lutz, on the grounds that it lacks foundation, it is argumentative, and it presents improper expert opinion. (Defs.' Objs. to Pls.' Evid., Docket No. 145). The Court finds that Dr. Lutz provides foundation for his expert opinion in his report and that his opinion is not argumentative under Federal Rule of Evidence 403. The objections on those bases are therefore overruled. While some of Dr. Lutz's declaration is objectionable in that it presents legal conclusions, the Court did not consider those conclusions in ruling on the Motion. The objections based on improper expert opinion are therefore overruled as moot.

B. <u>The Individual Defendants</u>

The Fourteenth Amendment underpins each of Woods's First, Second, and Fourth Claims against the Individual Defendants. *See, e.g.*, *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (discussing standard for "failure-to-protect claims brought by pretrial detainees against individual defendants under the Fourteenth Amendment"); *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021) (pretrial detainees' right to medical treatment "arise[s] under the Fourteenth Amendment's Due Process Clause"); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ("[P]arents have a Fourteenth Amendment liberty interest in the companionship and society of their children.")

Individual Defendants argue that they are entitled to qualified immunity on each of these claims. "In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. Cnty. of Orange* ("*Gordon II*"), 6 F.4th 961, 967–68 (9th Cir. 2021). In *Gordon II*, the Ninth Circuit considered a case brought by the mother of an inmate who died of an overdose while incarcerated. *Id.* The defendant officer admitted that his safety checks in the hours leading up to the inmate's death did not comply with Title 15 in that he could not discern whether the inmate "was breathing, alive, sweating profusely, drooling, or had any potential indicators of a physical problem." *Id.* at 967. The Ninth Circuit found that while the officer had violated the inmate's constitutional right to safety checks, the right had not been clearly established at the time. *Id.* at 973. The court held for the first time "that pre-trial detainees do have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." *Id.* The court further warned that "law enforcement and prison personnel should heed this warning because the recognition of this constitutional right

5

will protect future detainees." *Id.*

Nyarecha died in 2018, three years before *Gordon II*. Pre-trial detainees' constitutional right to safety checks had not yet been clearly established. Thus, the Individual Defendants are entitled to qualified immunity.

The Court **GRANTS** summary judgment as to the First and Second Claims, as well as to the Fourth Claim against the Individual Defendants.

C. *Monell* Claims

Under *Monell*, a municipality may be held liable under § 1983. *Monell*, 436 U.S. at 690. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," however. *Id.* at 694. Rather, to establish municipal liability, the plaintiff must show "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)). For the purposes of prongs two through four, a plaintiff may establish a municipal policy by showing his injuries were caused by either "an expressly adopted official policy, a long-standing practice or custom, or the decision of a 'final policymaker.'" *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).

As discussed above, Nyarecha had a constitutional right to direct-view safety checks. At issue, then, is whether the County Defendants have a policy of conducting safety checks inadequately. Woods alleges that they do. (TAC ¶¶ 68-79). To support his claim that inadequate safety checks are a "long-standing practice or custom" of the Sheriff's Department, Woods points to excerpted depositions from this case, in which deputies explain their methods for conducting cell checks. (*See* Decl. of Arnoldo Casillas, Docket No. 140). For example, Deputy Steele explained in his deposition

6

that when an inmate has a sheet over his body—as Nyarecha did when he was found—"there are times when it's very difficult to determine" whether the inmate is breathing, but deputies do not always try to elicit a response from inmates in those instances. (Pls.' Exh. 5). In contrast, in his deposition, Sergeant Gary Kellum stated that "[i]f a blanket is over an inmate, the deputy stands there to see if they are breathing, see if the chest is rising up and down." (Pls.' Exh. 7). If a deputy is not able to ascertain whether the inmate is breathing, according to Sergeant Kellum, the deputy is required to "call the sergeant, additional personnel, and then… go in and do a welfare check." (*Id.*). Woods also offers videos of two shifts' worth of safety checks conducted in Nyarecha's cell block on the night of June 5, 2018, and the morning of June 6, 2018. (Mot., Exh. 18A-E). In those videos, it does not appear that deputies stopped in front of the cells in Nyarecha's block to look in. (*Id.*). It is unclear whether the deputies would have been able to ascertain Nyarecha's breathing in the amount of time they took to conduct checks of his cell.

There is a lack of evidence in the record, however, showing similarly inadequate safety checks at other times. Generally, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Gordon II*, 6 F.4th at 974. Woods did not submit evidence of other cases in which the deputies acted similarly, nor any evidence of inadequate safety checks over a longer duration. Instead, Woods relies on the conduct of the deputies in this specific case over the course of less than 12 hours, but Woods has not cited—and the Court has not found—any cases stating that conduct over two shifts (or a similar duration) is enough to establish municipal liability under *Monell*. The Court therefore must **GRANT** summary judgment with regard to the County Defendants.

///

///

///

## IV. CONCLUSION

The Court **GRANTS** summary judgment for Defendants on all claims.

**IT IS SO ORDERED.**

Dated: July 18, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE